PARKER v. STEBLER et al.

(Circuit Court of Appeals, Ninth Circuit. March 7, 1910.)

No. 1,699.

1. PATENTS (§§ 58, 62*)—PRIOR USE—BURDEN AND MEASURE OF PROOF TO ESTABLISH.

The burden of proof to establish a defense of prior use to invalidate a patent rests on the defendant, and, where oral testimony of witnesses speaking from memory only is relied on, it must be so clear and satisfactory as to convince the court beyond a reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 75, 78; Dec. Dig. §§ 58, 62.*

Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. Mayor, etc., of City of New York, 69 C. C. A. 646.]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HAND-TRUCK.

The Bryan patent, No. 714,140, for a hand-truck particularly designed for moving boxes in a fruit packing house and having a clamping device by which the lower one of a tier of boxes may be grasped and the whole tier lifted and moved without separate handling, was not anticipated and discloses patentable invention of such merit as to entitle it to a fairly liberal construction. Also, *held* infringed.

Appeal from the Circuit Court of the United States for the Southern District of California.

Suit in equity by Fred Stebler and Austin A. Gamble against George D. Parker. Decree for complainants, and defendant appeals. Affirmed.

The appellees, as owners of the patent issued to Edgar J. Bryan on November 25, 1902, letters patent for a new and useful hand-truck, brought a suit against the appellant, alleging that he had infringed their patent. Upon the final hearing the trial court sustained the patent as to claims 1, 12, 14, 15, and 16, found that the appellant had infringed the same, and referred the cause to a master to state the amount of gains, profits, and advantages and to assess damages therefor, and enjoined the appellant from further infringing said claims. The claims are as follows:

"1. The combination with a truck of a pair of pivoted clamp members, and a foot-lever fulcrumed upon the truck adjacent to the front end and arranged at the inner side thereof within reach of the foot of the operator while grasping the handles of the truck in the elevated position of the latter, said foot-lever being connected to both clamp members for simultaneous operation thereof."

"12. The combination with a truck of a pair of clamp members which normally lie in a longitudinal alignment transversely of the truck, and have intermediate fulcrum connections therewith, spring actuated means to normally hold the clamp members in mutual alignment, and controlling means to overcome the tension of the spring and to throw the clamp members out of alignment."

"14. The combination with a truck of a pair of clamp members, and means for manipulating the same to grip an object to be carried upon the truck,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

each clamp member embodying a shank which is disposed transversely of the truck and projected in opposite directions across the adjacent side of the truck: the shank being intermediately fulcrumed within the area of the truck to swing longitudinally thereof, and the outer free end of the shank being provided with a jaw which is set at an angle to the plane of the truck and works in an arc of a circle disposed longitudinally of the truck.

"15. The combination with a hand-truck of foot-controlled, object-supporting means carried by the forward end portion of the truck, and hand-grips projected rearwardly at substantially right angles from the opposite side members of the truck and located intermediate of the ends thereof and near the rear end of the truck.

"16. The combination with a hand-truck having the rear ends of its side members formed into handles, of object-engaging means working at the front of the truck, a foot device for controlling the object-engaging means, said device being arranged adjacent to the front end of the truck and at the inner side thereof within reach of the foot of an operator when the truck is in an elevated position, and hand-grips projected rearwardly at substantially right angles from the opposite side members of the truck and located adjacent to and independent of the handles at the rear ends of the side members of the truck."

Tracy C. Becker and Raymond Ives Blakeslee, for appellant.

Frederick S. Lyon, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The Bryan truck is devised for the purpose of transporting boxes, and was particularly designed for use in packing houses in which oranges and lemons are packed in boxes. The boxes being stacked in tiers in the packing house, the invention provides a means operated by the foot of the operator to throw clamping jaws into engagement with the lower box or crate of the tier so that the pile of loaded boxes so engaged may be moved without touching any of them with the hands and without the necessity of tipping the pile so as to insert the truck beneath the lower box as was necessary with the trucks theretofore in use. With the Bryan truck it is necessary only to push the truck up to the front of the tier of boxes, tip the truck into an upright position so that the clamping jaws are projected alongside the lower box, then with the foot depress the foot-lever so as to bring the jaws into engagement, pull back on the truck, and carry the tiers of boxes wherever desired. There the tier of boxes is tipped until the lower box rests on the floor. The weight of the box being relieved from the clamps, the latter are automatically released by a spring and the tier of boxes is deposited. The advantages of the invention are apparent. One is that the tier of boxes is not required to be tipped forward in order to be taken on the truck; another is that the load may be discharged by simply tipping the truck forward until the lower box touches the floor; and another is that it dispenses with the necessity of stacking up the boxes in a packing house in such a manner as to leave room to tip back the tiers in order to get the nose of the truck under the lowest box as was done with the trucks formerly in use, thereby securing economy of space in the packing house.

The evidence is that the invention went into immediate and general use. The appellant does not deny the value of the invention nor the

fact that it at once went into general and extensive use, a use which has continued up to the present time, to the supercession of all other trucks. His principal defense is that of prior use. He relies upon the evidence that one Ruggles in the year 1897 invented and thereafter used a truck which embodied all the essential features of the Bryan patent. The evidence as to the nature of the Ruggles' invention, its successful use, and its precise features, is somewhat conflicting. He made but two trucks. The first was not satisfactory and was used but for a very short time. There is testimony that he then constructed another with certain changes and used it in a packing house in Redlands for two or three years, when the irons were removed therefrom and were sent East to the Kilbourne-Jacobs Manufacturing Company at Columbus, Ohio, in 1901. There was produced in evidence some of the irons taken from the first truck made by Ruggles, and also a truck prepared under the direction of Ruggles in June, 1908, for use as an exhibit upon the trial in the court below. The old irons of the first truck differ from the irons in the truck so exhibited; but the testimony of Ruggles and that of other witnesses is that the reconstructed truck is in all respects the same as the second truck which he made, the irons of which were shipped East as above stated. The irons which were sent East were not produced in evidence. Some attempt was made to show that inquiry had been made for them, and that they could not be found; but there was no deposition taken of any member of the firm to which they were sent, and their absence is not satisfactorily accounted for. Ruggles never made or caused to be made or used more than the two trucks so mentioned. He never took steps to manufacture trucks under his invention, and it is a significant fact that, although he was an inventor of other devices and was at that time applying for patents thereon, an application for one of which he filed on December 26, 1899, and for two others on October 20, 1900, he never filed an application for a patent on his truck, but, on the other hand, discarded his own invention and used the appellees' trucks. The evidence is convincing that Bryan knew nothing of the Ruggles' invention prior to the time of applying for his patent; but there is testimony that Ruggles thereafter called his attention to the fact that he had invented a similar truck and informed him that it had not been what he would like it to be, and that he had set it aside.

In view of all the testimony, some of which is conflicting, on this branch of the case, we are not prepared to say that the trial court was in error in holding that the evidence was insufficient to show that the Ruggles invention anticipated the Bryan invention or was a successful device, but that, on the contrary, it was a disappointment to Ruggles and was a failure and was discarded by him. It is well settled that the defense of prior use must be established by evidence which proves it beyond a reasonable doubt. The question of novelty is a question of fact. Turrill v. Michigan Southern R. R. Co., 1 Wall. 491, 17 L. Ed. 668. And it has been held that the oral testimony of many witnesses, if unsupported by any evidence consisting of documents or things, must be very reasonable or very strong to establish the defense of prior use. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Deering v. Winona Harvester

Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153. In the present case no physical evidence of the Ruggles invention is produced in evidence save a truck which was made for use in evidence, constructed from memory seven years after the original truck had disappeared from view. The irons which are produced and which were taken from the first experimental truck made by Ruggles cannot be said to furnish physical evidence of his invention, for only a portion of those irons was produced, and those which were produced obviously could not be used, fashioned as they are, in the device which is exhibited as the Ruggles invention. In Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017, the court said:

"The burden of proof is upon the defendants to establish this defense. For the grant of letters patent is prima facie evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty."

And in the Barbed Wire Patent Case the court said:

"The frequency with which testimony is tortured or fabricated outright, to build up the defense of prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer."

In brief, the courts have recognized the rule that the oral testimony of witnesses speaking from memory only in respect to past transactions and old structures claimed to anticipate a patented device, physical evidence of which is not produced, is very unreliable, and that it must be so clear and satisfactory as to convince the court beyond a reasonable doubt before it will be accepted as establishing anticipation. Knickerbocker & Co. v. Rogers (C. C.) 61 Fed. 297; Pratt et al. v. Seucenbaugh et al. (C. C.) 64 Fed. 779; Wickes v. Lockwood (C. C.) 65 Fed. 610; Singer Mfg. Co. v. Schenck (C. C.) 68 Fed. 191; Emerson Electric Mfg. Co. v. Van Nort Bros. (C. C.) 116 Fed. 974; Pettibone, Mulliken & Co. v. Penn. Steel Co. (C. C.) 133 Fed. 730.

The patents which the appellant cites as anticipating the appellees' truck requires but brief mention. The Pratt & Munhall truck does not embody any of the claims of the appellees' patent and could not be adapted to the use for which the appellees' invention was devised. The Cather truck is not so constructed that the weight of the load or stack of boxes will automatically tighten the grip of the clamping jaws thereto. It grips the object to be carried, not by the use of a foot-lever, but by the use of a hand-lever, and it is apparent that the grip upon the load can be maintained only by the application of constant pressure. In short, it is not shown to be, and it obviously is not, successful in operation. Of the Tower patent it is only necessary to say that it is no part of the prior art; Tower's application not having been filed until February 17, 1902.

A stipulation was filed in the court below in which the appellant admitted that the hand-trucks manufactured by him "contain and embody the combination of parts in the interrelations set forth in claims 1, 14, 15, and 16 of the Bryan patent." This stipulation, the appellees contend, removes from the case all dispute on the subject of infringement. The appellant insists, however, that such is not its effect or purport, and argues that the reason why the admission was made

was that the language of the claims relied upon in the patent in suit was so comprehensive that it could not be denied that it was broad enough to cover the combination and interrelation of parts in the trucks made by the appellant. But the appellant contends that the Bryan patent, if sustained, must be limited to the precise construction described therein, and that his device differs so far therefrom as to avoid infringement. We think, in view of the prior art, that the Bryan invention marked a distinct step in advance, whereby a notable success was achieved, and that its claims are entitled to a fairly liberal construction. The idea of so arranging the clamping irons that they were brought into engagement with the load by the depression of a foot-lever, after which they were held in position by the tension created by their own weight, thus dispensing with further application of power to the lever or a locking device to hold them in place, was of such novelty and merit as to justify its protection as against a mere change of form or a different location of the clamping irons or any variant construction of substantially the same device. Giving the claims such construction, it is apparent that the appellant's truck infringes them.

The decree is affirmed.